GERALD KOSKELA *et al.*, Plaintiffs-Appellants, *v.* FRED D. MARTIN *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-921

Opinion filed December 5, 1980.

Cooney & Stenn, of Chicago (William J. Harte and Kevin J. Conway, of counsel), for appellants.

Imming, Faber & Roeser, Chartered, of Elgin (Rance V. Buehler, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is a multicount action by plaintiffs against defendants for damages arising from the alleged negligent operation of defendant's truck which struck and collided with a vehicle driven by Gerald Koskela and caused serious injuries to him. Count III of the second amended complaint, brought by LeAnn Koskela, was dismissed upon motion of defendants for failure to state a cause of action. The issues on appeal are: (1) whether plaintiff LeAnn, the handicapped child of Gerald Koskela, can maintain a cause of action for loss of services, companionship, society and affection against defendants who allegedly negligently injured her father; and (2) whether article 1, section 12 of the 1970 Illinois Constitution mandates the creation of a child's loss of consortium action. We affirm the trial court, holding that count III does not properly state a cause of action.

LeAnn Koskela, through her mother and next friend, Kathleen Koskela, seeks damages against Fred D. Martin and Laseka Disposal Company (defendants) alleging negligence and serious injuries to her father, Gerald Koskela, as a result of an automobile-garbage truck accident. The complaint alleges that plaintiff LeAnn is suffering from autism which renders her unable to speak, understand what she hears or care for her own personal needs. It further claims that this disorder cannot be cured without special education, and that LeAnn was attending such a

special school. This education was disrupted and discontinued after the accident where her father was seriously and permanently injured and hospitalized, rendering him unable to drive her to school. The complaint alleges that Gerald Koskela suffered contusions, lacerations, broken bones, aggravation to pre-existing ailments, all of which are permanent and will keep him from attending to his ordinary duties and affairs. Additionally, the complaint alleges that LeAnn was uniquely dependent on her father for personal care and supervision because of her autistic condition and the ill health of her mother, who has been frequently hospitalized since the date of the accident. As such, LeAnn will be deprived of the personal care and attention she needs because her father's disabilities prevent him from attending to her. Moreover, since her education has been disrupted, she will be permanently harmed and her condition will deteriorate and not improve. Further, as a result of injuries to her father due to defendants' negligence, LeAnn will be deprived of his affection, society, and companionship and will be hindered and prevented from attending to her education and other affairs.

OPINION

Plaintiff contends that she has properly stated a cause of action against defendants who have allegedly negligently injured her father in an accident causing an indirect injury to her for lost society, services and companionship. We disagree. Before considering this issue, it is appropriate to briefly review the development of the concept regarding loss of services in the family relationship.

Recognition of the loss of services in the family relationship has evolved since common law where only the husband could sue for injuries inflicted on his family. (See *Patelski v. Snyder* (1913) 179 Ill. App. 24, where it was decided that a wife has no right of action against persons who injured her husband for her loss.) The court's rationale in this case was that the husband had the duty of supporting his family and, therefore, only he could be compensated for injuries which prevented him from meeting his obligations. The wife was considered the husband's servant, and as his servant she could not sue for loss of services of her master.

Illinois now recognizes a wife's loss of consortium. See *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, where our supreme court decided that the reasons which heretofore prevented a wife from suing for her loss due to the negligent injury of her husband no longer existed. The court declared that she was no longer his chattel but his "equal in the eyes of the law." (20 Ill. 2d 406, 429, 170 N.E.2d 881, 892.) *Dini* further stated that the basic reason for granting relief was "protection of the family, as the unit upon which our society is founded. This approach, moreover, is in accord with the entire movement of the law toward

protecting familial interests * * * ." 20 Ill. 2d 406, 430, 170 N.E.2d 881, 892.

Children are allowed to be the parties in interest in wrongful death actions (Ill. Rev. Stat. 1977, ch. 70, par. 2.) In *Wilbon v. D. F. Bast Co.* (1977), 48 Ill. App. 3d 98, 365 N.E.2d 498, *aff'd* (1978), 73 Ill. 2d 58, 382 N.E.2d 784, we stated that the children whose father had died as a result of defendant's negligent acts were deprived of his support and affection and had a valid claim for same against the defendant. We further stated that:

> "[I]t is the public policy of this State that minors must be protected by the courts and it is the duty of the court to protect all of the rights of minors who are participants in litigation." (48 Ill. App. 3d 98, 102, 365 N.E.2d 498, 500.)

This trend in the family relationship's doctrine is further illuminated by recognition of a child's cause of action in an alienation of affections suit first recognized in *Johnson v. Luhman* (1947), 330 Ill. App. 598, 71 N.E.2d 810. Our reasoning in this case was that the policy justifications which allowed a spouse to bring an alienation of affections action should also allow a child this same right. The alienation of affections act was enacted shortly after this decision (Ill. Rev. Stat. 1977, ch. 40, par. 1901 *et seq.*), and there was no distinction drawn between actions brought by spouses and those brought by children. *Rudnick v. Vokaty* (1980), 84 Ill. App. 3d 1003, 406 N.E.2d 105.

The trend in this State indicates the law is expanding with the times as a result of both statutory and judicial developments. It would appear that members of the family have an interest and a legal right to protect the family relationship. As such, we are aware that we must be alert to the trend that appears to be widening the circle of justice to all these family members who have valid claims. However, not every loss can be made compensable, and we must locate the line where liability terminates.

The claim in this action which asks us to recognize LeAnn's loss of society and companionship of her father due to his allegedly serious injuries creates a new cause of action beyond our judicially created remedy in *Dini*. This action, like the wrongful death and the alienation of affections actions, would best be provided by the legislature so that all aspects are considered and protected. We point out at the outset that defendant's motion to dismiss count III of the second amended complaint admits as true for the purpose of the motion all facts well pleaded together with all reasonable inferences therefrom. *Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 394 N.E.2d 452; *Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, 393 N.E.2d 580.

LeAnn, in support of her position, relies upon a recent case of *Berger v. Weber* (1978), 82 Mich. App. 199, 267 N.W.2d 124,[1] where the Michigan

---

[1] See also: *Ferriter v. O'Connell & Sons* (1980), ___ Mass. ___, ___ N.E.2d ___.

court recognized a cause of action brought by a mentally retarded child to recover damages for lost society, companionship and services as a result of both physical and psychological injuries sustained by her mother in an auto accident. As a result of the mother being severely injured, she could no longer administer to the peculiar needs of her daughter. This court reasoned that if a child suffers a compensable loss when a parent is killed, then it would seem an anomalous situation that when the parent is so severely injured and he or she cannot perform the parental function, that no action lies. It, therefore, concluded that the magnitude of the child's loss outweighed the factors which would militate against allowing recovery when the parent is severely injured.

While we are sympathetic to plaintiff's circumstances in the pending matter, we must, however, concur with the reasoning of the majority of jurisdictions[2] who believe that the determination of whether a child should be granted this cause of action is one of legislatively determined public policy. We feel this is the better view. Although it is argued that the common law "is a set of broad and comprehensive principles susceptible of judicial adaptation to changing social conditions and evolving concepts of justice,"[3] lack of sound precedent must be considered as a bar to recognizing this cause of action. The determination of where a negligent act in this instance has an end to its legal consequences is best left to the legislature.

The intangible emotional nature of this loss makes it difficult to assess pecuniary damages and provides a further reason against judicial recognition of this type of action without legislative initiative. Additionally, monetary compensation is not an adequate substitute for the companionship and guidance LeAnn received from her father, and so we have no standard by which to judge the adequacy of any award.

This difficulty in defining and quantifying damages increases the possibility of overlap. The injured parent will recover in his own personal injury action for loss of future earnings which affect his ability to support and care for his family. The jury may consider the child's loss of his parent's material services and support in his action for loss of consortium and thus there would be overlap recovery. Additionally, the jury, as a practical matter, has already considered the emotional losses sustained by the whole family in its award to the injured parent.[4] Therefore, allowing

---

[2] Annot., 69 A.L.R.3d 528 (1976); for more recent decisions see: *Morgel v. Winger* (N.D. 1980), 290 N.W.2d 266; *Hoesing v. Sears Roebuck & Co.* (D. Neb. 1980), 484 F. Supp. 478; *Roth v. Bell* (1979), 24 Wash. App. 92, 600 P.2d 602; *Borer v. American Airlines, Inc.* (1977), 19 Cal. 3d 441, 563 P.2d 858, 138 Cal. Rptr. 302.

[3] Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent*, 56 B.U.L. Rev. 722, 729 (1976), citing *Miller v. Monsen* (1949), 228 Minn. 400, 406, 37 N.W.2d 543, 547.

[4] *Halberg v. Sai K. Young* (1957), 41 Haw. 634; *Russell v. Salem Transportation Co.* (1972), 61 N.J. 502, 295 A.2d 862; *Berman v. Allan* (1979), 80 N.J. 421, 404 A.2d 8.

the child's consortium action could result in double compensation, which would not necessarily be alleviated by any simple jury instruction to only consider the child's loss of affection and companionship.

We are also concerned that recognition of a child's consortium action will result in increased litigation and multiple claims since each child would now have his or her own cause of action. The possibility of multiple lawsuits may hinder settlement or increase the expense involved as such. Additionally, the social burden of providing damages for this loss will ultimately be borne by the public through increased insurance premiums or in the enhanced danger that accrues from the greater number of people who will choose to go without any insurance.[5]

We must also consider as one of the consequences of this action that a defendant's liability could be greatly expanded. It may be difficult for courts to draw the line to end litigation if all members of the household, such as cousins, grandchildren, and foster children, could have potential claims for loss of consortium. Requiring a defendant who has tortiously injured one person to pay for resulting losses experienced by every other person would place an entirely unreasonable burden on all human activity.[6]

Lastly, we must point out that historically the consortium action dealt with the impairment or destruction of the sexual life of a married couple. This does not exist as an element of damage in a child's action for loss of consortium.

Plaintiff's argument that article I, section 12 of the Illinois Constitution (Ill. Const. 1970, art. I, §12) mandates the creation of parental consortium must also fail. Our supreme court has held that this section, and its predecessors, providing that every person ought to find "certain remedy" in the laws for all injuries and wrongs which he may receive to his person, property or reputation constitutes an expression of a philosophy and not a mandate that a certain remedy be provided in any specific form. *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281 N.E.2d 659.

Section 12 of article 1 incorporates the guarantees formerly contained in article 11, section 19 of the Illinois Constitution of 1870. Nothing in this section was meant to have a substantive effect in Illinois law or create any new constitutional right. *Angelini v. Snow* (1978), 58 Ill. App. 3d 116, 374 N.E.2d 215.

For the foregoing reasons, we affirm the order of the trial court dismissing count III of the second amended complaint.

Affirmed.

LORENZ and MEJDA, JJ., concur.

---

[5] *Borer*, n. 2.

[6] Prosser, Law of Torts §54, at 334 (4th ed. 1971).