712 F.2d 1166
 DUNDEE CEMENT COMPANY, a Delaware Corporation, Plaintiff-Appellant,
v.
CHEMICAL LABORATORIES, INC., a Kansas Corporation, d/b/a
Penn State Industries, and Daniel A. Vaughn,
Individually, Defendants-Appellees.
 No. 82-2894.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 8, 1983.
Decided July 18, 1983.
 
 Paul W. Schroeder, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff-appellant.
 Barry L. Kroll, Jacobs, Williams & Montgomery, Ltd., Chicago, Ill., for defendants-appellees.
 Before PELL and COFFEY, Circuit Judges, and WEIGEL, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 In this case we consider whether Illinois tort law permits a plaintiff whose property was not physically damaged to recover for purely economic losses allegedly caused by the negligence of a defendant. The district court granted the appellees' motion to dismiss the complaint on the grounds that the appellees had no legal duty to the appellant and that Illinois law does not permit recovery under a negligence theory for purely economic losses.
 
 I. FACTS
 
 2
 Because the district court granted the appellees' motion to dismiss, Fed.R.Civ.P. 12(b)(6), we will accept the appellant's version of the facts for purposes of this appeal.
 
 
 3
 On October 31, 1980, a truck owned by Chemical Laboratories, Inc. (Chemical) and driven by its employee Daniel A. Vaughn overturned on United States Route 83 in Lemont, Illinois. The truck was carrying a flammable liquid that spilled onto the road as a result of the accident. Although the liquid did not ignite, state highway authorities closed Route 83 for more than five hours.
 
 
 4
 Dundee Cement Co. (Dundee) owns a cement terminal whose sole access road connects with the part of Route 83 that was closed after the accident. The company alleges that it lost at least $29,595.02 in business because customers were unable to reach the access road while Route 83 was closed. None of Dundee's property was physically damaged by the spill.
 
 
 5
 On March 30, 1982, Dundee brought this diversity action in the United States District Court for the Northern District of Illinois. Count I of the complaint sought recovery from Vaughn for lost profits, alleging that he breached his duty to Dundee either by driving negligently or by negligently inspecting and maintaining the truck's brakes. Count II sought to recover from Chemical for the same lost profits, contending as three alternatives that Chemical negligently inspected and maintained the brakes, that it was vicariously liable for Vaughn's negligent driving, and that res ipsa loquitur applied.
 
 
 6
 The appellees moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The district court granted the motion in an order dated September 30, 1982, holding, first, that the appellees had no duty to the appellant because the damages were too indirect and remote as a matter of policy to allow recovery and, second, that Illinois law bars recovery for purely economic losses.
 
 
 7
 On October 12, 1982, the appellants moved to reconsider the order under rule 59(e) of the Federal Rules of Civil Procedure. The court denied this motion on October 20. The appellants appealed from both orders.II. DISCUSSION
 
 
 8
 In Illinois, the state whose law governs this case, a plaintiff in a negligence action must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. Cunis v. Brennan, 56 Ill.2d 372, 374, 308 N.E.2d 617, 618 (1974). The district court rejected the appellant's contention that the appellees owed a duty to Dundee and held, additionally, that Illinois law bars recovery for purely economic losses.
 
 
 9
 We will address both of the alternative bases for the court's holding. First, we will consider whether the injury claimed was too remote a consequence of the appellees' negligence to permit the appellant to recover under Illinois law. Second, we will consider whether Illinois permits recovery for purely economic losses.
 
 A. Remoteness
 
 10
 The appellees contended, at oral argument, that the injury to Dundee was too remote because the spill was not the proximate cause of the injury to the appellant. They asserted that the injury occurred when the highway authorities closed the road. When questioned, however, the appellees acknowledged that they would argue that the injury was too remote even if no third parties had been involved.
 
 
 11
 This uncertainty suggests that there is some confusion about the type of remoteness at issue. The question properly is one of legal, not factual, remoteness. Although courts often refer to remoteness or lack of foreseeability, most cases that preclude a plaintiff from recovering against a defendant for economic losses actually are based on the legal policy that, regardless of foreseeability, a certain type of plaintiff should not be able to recover against a negligent defendant. See James, Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal, 25 Vand.L.Rev. 43, 44 (1977) (stating that in many economic injury cases the loss "would be readily recoverable if the test of duty--or remoteness--usually associated with the law of negligence were applied"); 88 Harv.L.Rev. 444, 448 (1974) ("the basis for denying recovery for negligently caused economic loss must lie elsewhere than in the problem of foreseeability" (footnote omitted)).[1]
 
 
 12
 In this case, the causal relation between the spill and the loss of business is direct. In contrast to the famous series of unlikely occurrences in Palsgraf v. Long Island Railroad, 248 N.Y. 339, 162 N.E. 99 (1928), for example, one could easily foresee that an accident that forced a road to close and that therefore blocked all access to a company could seriously inconvenience that company.
 
 
 13
 The type of plaintiff generally precluded from recovering is the third party who suffers no physical damage to person or property, but who claims harm as a result of injury to the person or property of another. Here, Dundee suffered no physical injury, but claims that the harm to the state's property (the road) caused it economic loss. By contrast, the rule allowing recovery to those physically harmed presumably would let the state recover from the appellees for their negligent damage to the road. Similarly, Dundee could recover if its property had been damaged by the spill. The question, therefore, is whether Illinois law deems the appellant too remote a plaintiff because it was not physically harmed.
 
 
 14
 Several recent Illinois cases have considered whether third parties who suffered no physical harm can recover from the wrongdoer for the harm done to another. In Koskela v. Martin, 91 Ill.App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980), the court held that a handicapped child could not bring an action for loss of parental services, companionship, society, and affection against the negligent owner and driver of a truck that collided with a car driven by the child's father. The child alleged that the accident rendered her father unable either to provide her with needed special care or to drive her to school. The court reasoned that to allow such a derivative action would unacceptably expand a defendant's liability: "Requiring a defendant who has tortiously injured one person to pay for resulting losses experienced by every other person would place an entirely unreasonable burden on all human activity." Id. at 572, 47 Ill.Dec. at 35, 414 N.E.2d at 1151 (footnote omitted). Accord, Curtis v. County of Cook, 109 Ill.App.3d 400, 409, 65 Ill.Dec. 87, 93, 440 N.E.2d 942, 948 (1982) (following Koskela ).
 
 
 15
 Similarly, the Illinois Supreme Court in Woodill v. Parke Davis & Co., 79 Ill.2d 26, 38, 37 Ill.Dec. 304, 310, 402 N.E.2d 194, 200 (1980), specifically adopted the appellate court's conclusion in the case that parents could not recover in strict products liability for the emotional distress and mental anguish they suffered when their child was injured by a defective product. The appellate court had said that the plaintiffs could recover only if they had suffered physical harm. 58 Ill.App.3d 349, 355, 15 Ill.Dec. 900, 905, 374 N.E.2d 683, 688 (1978).
 
 
 16
 Illinois has recognized a limited exception to the rule of nonliability when there is a special relationship between a negligent party and a third party who is economically injured. In Ogle v. Fuiten, 112 Ill.App.3d 1048, 68 Ill.Dec. 491, 445 N.E.2d 1344 (1983), for example, the court allowed nonclients to maintain an action against an attorney for negligence in preparing wills that had named the plaintiffs as beneficiaries. The court relied on Pelham v. Griesheimer, 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96 (1982), which, although denying the nonclients' action against an attorney, held that a nonclient could recover if it proved that the client's intent to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship. Id. at 20-21, 64 Ill.Dec. at 547, 440 N.E.2d at 99.
 
 
 17
 None of these cases support the appellant's position. The Illinois courts rejected the plaintiffs' claims in Koskela and Woodill even though they presented more sympathetic cases for recovery than here. In Koskela, the plaintiff was physically dependent on her father's help. In Woodill, the parents alleged an emotional injury, which is far more like a physical injury than an economic injury is. Finally, in Ogle, the plaintiffs had a special relationship to the client, attorney, and wills. Here, Dundee had no special relationship with the state, the appellees, or the road (other than as a mere user). Thus we conclude that it follows from these cases that Illinois law bars recovery for a claim like the one here where economic loss alone is alleged and where there is no special relationship among the parties or between the plaintiff and the injured property of another.
 
 B. Economic Loss
 
 18
 The district court held that purely economic losses are not recoverable in a negligence action. An examination of Illinois law leads us to agree with that conclusion.[2]
 
 
 19
 A case on point is Moorman Manufacturing Co. v. National Tank Co., 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). There, a feed processor sued a grain storage tank manufacturer under strict liability and negligence theories for economic loss resulting from a crack in the tank. The court held that neither strict liability nor negligence theories could support a recovery for solely economic loss. Id. at 88, 61 Ill.Dec. at 753, 435 N.E.2d at 450. Accord, Redarowicz v. Ohlendorf, 92 Ill.2d 171, 176, 65 Ill.Dec. 411, 413, 441 N.E.2d 324, 326 (1982) (stating, in a negligence case, that "a plaintiff cannot recover solely economic losses in tort").
 
 
 20
 Moorman is distinguishable from the instant case, but not in a way that helps the appellant. The plaintiff in that case was the owner of the allegedly defective tank, and sought recovery for the cost of repairs of the tank and for loss of use of the tank. The court rejected both claims as unrecoverable economic losses. Here, the appellant had no ownership interest in the road, but instead was a complete stranger to the accident. It follows that if the type of economic loss involved in Moorman was not recoverable, the more attenuated economic loss here involved would not be recoverable under Illinois law.
 
 
 21
 The appellant argues that the appellees had a higher duty to the world because they were transporting volatile chemicals. Dundee asserts that this higher duty makes the appellees liable for economic losses. The court in Moorman, however, rejected that argument: "[T]he unreasonably dangerous nature of a product has particular relevance when a personal injury results and to some degree when property damage occurs. It has little relevance to economic loss when neither personal injury nor property damage is involved." 91 Ill.2d at 77, 61 Ill.Dec. at 749-50, 435 N.E.2d at 446-47 (emphasis added).
 
 
 22
 The appellant contends that Illinois permits recovery for lost profits where the losses are proved and shown to be proximately caused by the defendant's tortious conduct. The award of lost profits is allowed only in limited circumstances, however: when the defendant has intentionally harmed the plaintiff or when the plaintiff or his property is physically injured. In ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc., 90 Ill.App.3d 817, 46 Ill.Dec. 186, 413 N.E.2d 1299 (1980), a case cited by the appellant, the court allowed recovery of lost profits by the plaintiff corporation where the complaint had charged corporate officers with fraud, conspiracy, and breach of their fiduciary duty in attempting to have more than thirty of the corporation's employees resign and work for a competitor. This was an intentional tort, unlike the negligence alleged here and in Moorman, and the plaintiff was not a third party, but rather was the intended victim. Accord, Powers v. Sturm, 12 Ill.App.3d 346, 351, 297 N.E.2d 628, 631 (1973) (allowing lost profits where the defendants had willfully and wantonly removed engines from the plaintiff's oil wells).
 
 
 23
 In Schatz v. Abbott Laboratories, Inc., 51 Ill.2d 143, 281 N.E.2d 323 (1972), also cited by the appellant, the court allowed the recovery of lost profits in a nuisance action. The court held that the plaintiff's movie theatre's business had been reduced as a direct result of the noxious odors emanating from the defendant's business. The plaintiff's property, unlike the situation in the instant case, was physically invaded by the noxious odors.
 
 
 24
 Furthermore, as noted in Part IIA, supra, Illinois also allows the recovery for economic losses in the limited situation in which there is a special relationship between the parties. See Ogle v. Fuiten, 112 Ill.App.3d 1048, 68 Ill.Dec. 491, 445 N.E.2d 1344 (1983) (nonclient can sue attorney for malpractice in some circumstances).
 
 
 25
 Accordingly, we conclude that Illinois law bars the appellant's claim both because the appellant is legally too remote a party to recover and because a plaintiff cannot recover purely economic losses in a negligence action.
 
 C. Legal Policy Considerations
 
 26
 Because of the possible revolution in tort law that could occur if a rule generally allowing for the recovery of third-party economic losses were adopted, we find it appropriate to comment on the legal policy reasons supporting the rule of nonliability.
 
 
 27
 We cannot be unmindful that the twentieth century expansion of the concept of tort liability may not be characterized as nanism. Thus, there might be a certain appeal to the argument that economic injuries to third parties caused by the negligence of another should be recoverable. Because economic injuries often are no less foreseeable than physical injuries, it may appear arbitrary that denial of recovery depends upon the fortuity that one has suffered no physical harm to person or property. Denial of recovery may seem especially arbitrary if one believes that economic expectancies are worthy of legal protection. See Note, Negligent Interference With Economic Expectancy: The Case for Recovery, 16 Stan.L.Rev. 664, 694 (1964).
 
 
 28
 Most courts and commentators have opposed allowing recovery of purely economic losses because of the fear that there will be crushing, virtually open-ended liability imposed on defendants if economic claims are recognized. "[O]nly a limited amount of physical damage can ever ensue from a single act, while the number of economic interests a tortfeasor may destroy in a brief moment of carelessness is practically limitless." Comment, Foreseeability of Third-Party Economic Injuries--A Problem in Analysis, 20 U.Chi.L.Rev. 283, 298 (1953). As Chief Judge (later Justice) Cardozo succinctly put it, liability would be "in an indeterminate amount for an indeterminate time to an indeterminate class." Ultramares Corp. v. Touche, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931) (holding that a public accountant was not liable to creditors and investors who relied upon a negligently prepared balance sheet reflecting the assets of a company).
 
 
 29
 The possible extent of the liability is staggering. At oral argument in the instant case, for example, the appellant contended in response to a hypothetical question that a defendant would be liable to all of the tenants in the Empire State Building who lost business as a result of the defendant's negligence in causing the access to the building to be closed. The appellants argued that this result would be fair and noted that the tortfeasor would be paid to assume that risk. Cf. 88 Harv.L.Rev. 444, 450 (1974) ("While it is undesirable to place a crushing burden of liability on a negligent defendant, it is worse to leave such a burden on a few nonnegligent plaintiffs.").
 
 
 30
 Obviously, the price that a carrier would demand in order to compensate for the real risk of being put out of business if sued by even a few of the tenants in the Empire State Building would be great. Furthermore, it is doubtful that insurance companies would be willing to cover such large risks. See id. at 449 & n. 31. Whether the extent of the expense would result in a crippling burden on commerce, as some have suggested, see Horton, How Lawsuits Brought the World's Greatest Nation to Ruin, Med.Econ., Feb. 21, 1977, at 142,[3] is a matter of conjecture. Nevertheless, there is little doubt that allowing recovery in such cases would give vastly more people recourse against tortfeasors.
 
 
 31
 Some have argued that such fears probably are groundless, that predictions in the past about unmanageable litigation burdens have been exaggerated, and that making a similar objection here is once again crying "wolf." See Note, supra pages 1170-1171, at 693 (suggesting that most persons economically injured will not bother to sue).
 
 
 32
 To allow recovery in the instant case, however, would not be to recognize a limited exception to the general rule of nonliability. Instead, the effect would be virtually to repeal that rule. In some cases the result perhaps would appear just, but in many the effect would be to compel legal involvement in inconveniences that most people previously considered inevitable in a crowded world, such as delays caused by accidents on the highway. The effect also would be to make a tortfeasor an insurer for the economic losses suffered by the people inconvenienced by his negligent action.
 
 
 33
 The appellant does not even suggest a sensible stopping point for liability,[4] and we conclude that there is a legitimate fear that a crushing burden of litigation would result from allowing recovery for economic damages like this. The multiversant possibilities of such litigation are staggering to the imagination. We are not overly impressed by the mycterism of Pandora's box. "[A]lthough the cry of 'wolf' may often be false, there are wolves, and wolves are dangerous. One should not blandly assume that it is impossible for a broad rule of liability to cripple desirable activity just because in other cases some rules of liability have not had this consequence." James, supra page 1168, at 49 (emphasis in original).
 
 
 34
 In sum, we are not persuaded that the courts of Illinois are prepared to embrace the position advocated by the appellant in this case.
 
 CONCLUSION
 
 35
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 Stanley A. Weigel, Senior District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The extent of the economic harm well might be unforeseeable, but if third party plaintiffs were otherwise generally allowed to maintain actions against negligent defendants this objection could be overcome (except, perhaps, in extreme cases) by application of the familiar tort maxim that a tortfeasor takes his victim as he finds him
 
 
 [2]
 The appellant contends that the appellees have abandoned their argument that economic injuries are not recoverable. This is not accurate. The appellees did not develop the argument in their brief, but did not state that they had abandoned it
 
 
 [3]
 In this satirical article obviously directed at the increasing litigiousness of American society, the author details how cases such as the one before us led the fictitious country of Litigania to collapse:
 In tort law, Litigania had long followed the concept that each person bears primary responsibility for his own destiny. In the 20th century, however, people recoiled from this harsh doctrine and sought to provide the individual with protection against misfortune. Bit by bit, Litigania eventually arrived at the conclusion that the individual himself is in no way responsible for his misfortunes. To decide in each case just who is responsible required a growing mountain of laws, court decisions, court personnel, and legal talent.
 ....
 ... It soon became very difficult to get anyone to make or sell anything, and most people went back to the ancient art of making things for themselves.
 Horton, supra, at 147, 149.
 
 
 [4]
 Some have suggested a rule of limitation analogous to the doctrine of public nuisance. A plaintiff who could show damages different from or grossly in excess of those suffered by the general public would be allowed to recover. 88 Harv.L.Rev. 444, 452 (1974). The difficulty with this reasonable-sounding suggestion, like the suggestion for a case-by-case balancing of interests put forth in Note, supra page 1171, at 694, is that it would still encourage a flood of new litigation by people trying to show that they were specially damaged. Even if most would ultimately not recover, the burden on the court system would be great, and, as noted, so probably would the deterrent effect on desirable economic activity because of people's unwillingness to be taken to court even if they ultimately would win. "The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences." Ultramares Corp. v. Touche, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931) (Cardozo, C.J.)