Stephen L. REIGHLEY, Individually and as Personal Representative of the Estate of Sally J. Reighley, and on Behalf of Matthew Reighley and Whitney Reighley, Minors, Plaintiff,

v.

INTERNATIONAL PLAYTEX, INC., a Delaware corporation, Defendant.

Civ. A. No. 83–JM–1235.

United States District Court,
D. Colorado.

March 18, 1985.

John A. Purvis and Heather Ryan, Hutchinson, Black, Hill, Buchanan & Cook, Boulder, Colo., for plaintiff.

Raymond J. Connell and Terry Christopher, Hall & Evans, Denver, Colo., Grace M. Healy, Angelo G. Savino and Glenn J. Pogust, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant.

## ORDER

JOHN P. MOORE, District Judge.

This is a "toxic shock" case in which plaintiff, Stephen L. Reighley, sues individually and on behalf of his two minor children, Matthew and Whitney, for the injuries which resulted in the death of Sally Reighley, plaintiff's wife. Defendant, International Playtex, Inc., seeks partial summary judgment to dismiss the claims of the

minor children from the suit on the grounds that: (1) Colo.Rev.Stat. § 13–21–201 (1973) vests the sole right to bring a wrongful death action in the surviving spouse; (2) only the personal representative of the deceased may bring a survival claim pursuant to Colo.Rev.Stat. § 13–20–101; and (3) minor children have no independent cause of action for the loss of consortium of a parent.

Jurisdiction is founded on 28 U.S.C. § 1332. The issues have been fully briefed and will be addressed seriatum.

▇▇▇ Section 13–21–201 of the Colorado Revised Statutes (1973) codifies both an action for wrongful death and the scheme within which a claimant may seek redress. As provided in part, damages for wrongful death may be sued for and recovered:

(a) By the husband or wife of the deceased; or

(b) If there is no husband or wife, or she fails to sue within one year after such death, then by the heir or heirs of the deceased.

The statute gives standing only to those individuals specifically designated, *Kling v. Phayer*, 130 Colo. 158, 274 P.2d 97 (1954), and vests the primary, exclusive right in the surviving spouse unless suit is not brought within the year after death. *Peck v. Taylor*, 38 Colo.App. 90, 554 P.2d 698 (1976); *Clint v. Stolworthy*, 144 Colo. 597, 357 P.2d 649 (1960).

Defendant contends that the children's claim must be dismissed for lack of standing to bring an independent suit for the wrongful death of their mother. The plaintiff does not dispute the surviving spouse's exclusive right to bring an action for wrongful death within the first year but maintains that because the children have a proprietary interest in the judgment, their inclusion in the pleading is merely notification that suit is brought on their behalf.

Colo.Rev.Stat. § 13–21–201(2) provides in part:

If the action under this section is brought by the husband or wife of the deceased, the judgment obtained in said action shall be owned by such persons as are heirs at law of the deceased under the statutes of descent and distribution, and shall be divided by such heirs at law … according to said statute of descent and distribution.

In *Peck v. Taylor*, 38 Colo.App. 90, 554 P.2d 698 (1976), a wrongful death action by a surviving spouse and daughter, the Colorado Court of Appeals stated: "since the purpose of the statute is to compensate those who sustain pecuniary injury by the loss of the life of a spouse or parent, retention here of both husband and daughter as parties plaintiff is proper." *Id.* 554 P.2d at 699.

▇▇▇ Plaintiff, Stephen Reighley, has sued individually. Thus, in the light of *Peck v. Taylor*, the addition of the children as parties would appear to offend neither the statutory scheme or precedent. This is particularly true since the children have a statutory right to share in any judgment recovered.

▇▇▇ In contrast, plaintiffs' third and fourth claims for relief (outrageous conduct and negligent infliction of emotional distress respectively), are survival claims authorized pursuant to Colo.Rev.Stat. § 13–20–101 (1973), (amended L. 75, p. 587, § 4). Because any recovery under a survival action inures to the estate and is independent of the limits of a wrongful death action, *Hernandez v. United States*, 383 F.Supp. 168, 173 (D.Colo.1974) only the personal representative of the decedent may bring such a suit. *Espinoza v. O'Dell*, 633 P.2d 455, 466 (Colo.1981). Consequently, Stephen Reighley as personal representative of Sally Reighley's estate is the sole proper plaintiff, and the children have no standing to assert these claims.

▇▇▇ In seeking dismissal of the children's claim for loss of consortium, defendant raises an issue of first impression in this jurisdiction. Neither party initially requested certification to the Colorado Supreme Court pursuant to Colorado Appellate Rule 21, nor expressed objection to my resolution of the question. Since the use

of certification rests in the sound discretion of the federal court, *Lehman Brothers v. Schein*, 416 U.S. 386, 389, 94 S.Ct. 1741, 1743, 40 L.Ed.2d 215 (1974), I will address the issue to avoid further delay and to preserve the present discovery momentum.

■ In so doing, I am mindful that where no controlling Colorado law has either been found or presented, it is the duty of the federal court to attempt to construe the law of the state of Colorado in the manner in which the state's Supreme Court would, if faced with the same facts and issue. *City of Aurora, Colorado v. Bechtel Corp.*, 599 F.2d 382 (10th Cir.1979); *Burgert v. Tietjens*, 499 F.2d 1 (10th Cir. 1974) (citations omitted). In examination of the question the decisions of other courts, state and federal, must be considered along with the general weight and trend of authority. *In re Birdseye*, 548 F.2d 321 (10th Cir.1977).

■ The precise issue presented is whether a minor child may maintain an independent cause of action against a tortfeasor for the loss of society and companionship of a parent. While the term "loss of consortium" has been attached to the children's claim, the broader term, "loss of society and companionship," is equally appropriate. Use of the latter term avoids the narrower construction connoting this right derives primarily from the sexual relationship incident to marriage. Indeed, loss of consortium is "a useful though ambiguous term having a rather old-fashioned ring today." H. Clark, *Domestic Relations* § 10.1 (1968). While companionship may include sexual relations [*See, e.g.* Prosser, Torts § 125 at 889 (4th ed. 1971) as cited in CJI–Civ.2d 6:7 (1980) ], courts have continued to regard loss of consortium to embrace all of those values—tangible and intangible—inherent in the family relationship. In his treatise, Clark (*supra.*) asserts that the term loss of consortium is equally appropriate in reference to the parent-child relationship to summarize "the multitude of rights and duties binding parents to their children and vice versa." Clark at § 10.1 (1968).

Thus, in the context of the parent-child relationship, the term consortium encompasses a complex of rights—care, comfort, guidance, society, companionship—which is imbued from the earliest stages of bonding infant to parent. Indeed, the family unit has been recognized by the Supreme Court to bear constitutionally protected aspects. *See, e.g. Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). The Tenth Circuit has recognized certain family interests as liberty interests predating both the federal Constitution and state laws. *Wise v. Bravo*, 666 F.2d 1328 (10th Cir.1981).

In addition to these constitutional protections, Colorado tort law has evolved by legislation and judicial decision to impose duties and liabilities on individual conduct interfering with the family relationship. Only recently, however, has a recovery for loss of consortium, historically rooted in the doctrine of *paterfamilias*, been made available to a wife as well as a husband. Colo.Rev.Stat. § 14–2–209 (1973); *Crouch v. West*, 29 Colo.App. 72, 477 P.2d 805 (1970). A parent's interest to be free from tortious conduct harming his spouse or child is equally that of the child who looks to his parents for care, security, nurture and guidance. If, indeed, there is a right or interest in the family relationship to be protected for a husband and wife, that right must be no less sanctioned by the courts for the children of that relationship.

Contrary to the defendant's contention that the courts have repeatedly denied a child's independent cause of action for loss of consortium, there is a nascent but growing trend to recognize and expand this cause of action.[1] In fact, the only present

1. Recognition of a child's independent claim for loss of consortium has found considerable support in the legal commentary. *See e.g.* Maynes, *Loss of Parental Consortium*, 8 J.Juv.L. 219

(1984); Note, *A Minor Child's Claim for Lost Parental Society and Companionship in Illinois: Another Look*, 17 J.Mar.L.R. 113 (1984); Note, *Right of a Child to a Cause of Action for Loss of*

controversy appears to surround the issue of whether the cause of action may also be allowed when the parent is seriously injured by the negligence of another. Several jurisdictions have held that it would be anomalous to sustain a recovery when the parent dies but to deny one when the parent lies comatose or is seriously injured. *See, e.g., Rosen v. Zorzos,* 449 So.2d 359 (Fla.App. 5 Dist.1984); *Theama v. City of Kenosha,* 117 Wis.2d 508, 344 N.W.2d 513 (1984); *Ueland v. Reynolds Metals Co.,* 103 Wash.2d 131, 691 P.2d 190 (1984); *Audubon-Exira Ready Mix, Inc. v. Illinois Central Gulf Railroad Co.,* 335 N.W.2d 148 (Iowa 1983) (reversing *Weitl* because Iowa Code § 613.15 already included parental consortium damages but upholding its rationale); *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981); *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981); *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980).

Those jurisdictions that have rejected a child's claims for loss of consortium have done so for a variety of reasons. In *Salin v. Kloempken,* 322 N.W.2d 736 (Minn. 1982), the court was persuaded that increased insurance costs, public policy and the burden on litigation and settlements were paramount to recognizing a child's claim. The Oregon Supreme Court deferred to the legislature. *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318 (1982). While the court in *Mueller v. Hellrung Construction Co.,* 107 Ill.App.3d 337, 63 Ill.Dec. 140, 437 N.E.2d 789 (1982), denied the child's independent claim for loss of consortium when his parent was injured, and speculated on the potential for burgeoning insurance, court, and social costs, it recognized implic-

itly that were the parent to die, such an action would lie. On this basis, the federal court for the Central District of Illinois later expressly concluded that "Illinois does indeed recognize a cause of action on behalf of a child for the loss of a parent's society when the parent dies due to the wrongful act of another." *Estate of Davis v. Hazen,* 582 F.Supp. 938 (C.D.Ill.1983).[2]

In *Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977), the court rejected the child's claim for loss of parental consortium when the mother was injured. Though sympathetic to the child's need for love, affection, society, and guidance from a parent, the court concluded that monetary compensation would inadequately alleviate the tragedy; that damages would be difficult to measure; and that extended and disproportionate liability might result. In his dissent, Justice Mosk reminded, "[T]he rights of a proposed new class of tort plaintiff should be forthrightly judged on their own merits, rather than by indulging in gloomy speculation on where it will all end." *Id.* 138 Cal.Rptr. at 314, 563 P.2d at 870.

■ I am not unmindful of the vital role the legislature must play in fashioning tort law, but I will not abdicate my responsibility to address an issue on which the legislature and the state courts have not spoken. Concerns about multiple suits, unlimited liability and the difficulty of calculating damages arise each time a new cause of action is considered. Yet these concerns should not bar the action from the outset. If a jury is capable of calculating the intangible loss a parent suffers upon the negligent death of a child, *Stevens v. Strauss,* 147 Colo. 547, 364 P.2d 382 (1961), the converse must be equally true. The child's

---

*Society and Companionship When the Parent is Tortiously Injured,* 28 Wayne L.Rev. 1877 (1982); Note, *Parent's Right to Sue for Negligent Disruption of Parental Consortium,* 22 Washburn L.J. 78 (1982); Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent,* 56 B.U.L.Rev. 722 (1977); Comment, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal,* 13 San Diego L.Rev. 231 (1975).

**2.** Defendant relies on *Koskela v. Martin,* 91 Ill. App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980), which denied the child's claim. The *Hazen* court distinguished *Koskela* both on the facts (the injury to the child's father was non-fatal) and the law (*Koskela* overlooked Illinois precedent and was decided much earlier).

loss of parental consortium is no more intangible than that of a parent-spouse.

I am equally unpersuaded by the assertion that monetary compensation will not restore the loss a child suffers. *Hoesing v. Sears, Roebuck & Company,* 484 F.Supp. 478 (D.Neb.1980); *Borer v. American Airlines, Inc. (supra.).* To suggest that a monetary award could replace a parent's care and society is an absurdity. However, as the Wisconsin Supreme Court noted, "it is the only workable way that our legal system has found to ease the injured party's tragic loss. We recognize this is a shortcoming of our society, yet we believe that allowing such an award is clearly preferable to completely denying recovery." *Theama v. City of Kenosha,* 117 Wis.2d 508, 523, 344 N.W.2d 513 (1984).

The argument that a court's compensating this loss would be speculative or impossible of calculation also rings hollow. Such remoteness or speculation has not barred a husband's or wife's cause of action, *Duffy v. Gross,* 121 Colo. 198, 210–11, 214 P.2d 498, 505 (1950) or a parent's recovery for loss of a child's services. *Stevens v. Strauss, (supra.).*

Numerous studies reveal that the bereavement reaction of a young child impairs the child's social functioning with the family, at school, and in the child's peer group. Commonly, children do not understand what has happened when a parent dies, often equating death with abandonment or punishment. A child may experience feelings of guilt, rejection, and loss of self-esteem.[3] In its more acute initial stage, loss of a parent is a traumatic experience often manifested by depression, fear of entering new relationships, and a poor self-concept. Early parent death has also been linked to later adult depression, schizophrenia, sociopathic personality, and various other unspecified psychoneurosis.[4]

For young children, as in this case, monetary compensation could have a direct effect on the continuing impact of the loss of a parent and the restoration of a more normal family unit. For one, the recovery could be used to hire a housekeeper or caretaker to assume the duties left by the decedent, perhaps even to enable the children to remain at home. For another, counselling or therapy might be sought were the expenses provided for. Finally, therapeutic intervention at later stages in the child's development could also be entertained.

As the court in *Berger v. Weber (supra.)* noted in assessing the impact such a recovery would have on insurance costs:

> [C]ompensating a child who has suffered emotional problems because of the deprivation of a parent's love and affection may provide the child with the means of adjustment to the loss. The child receives the immediate benefit of the compensation, but Society will also benefit if the child is able to function without emotional handicap. This may well offset any increase in insurance premiums.

*Id.* 303 N.W.2d at 426.

■ Protecting a child's right to a secure home environment is a manifest legislative policy in Colorado. The Children's Code, Colo.Rev.Stat. § 19–1–101 et seq. (1973) provides in part:

> (1) The general assembly declares that the purposes of this title are:
>
> (a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;
>
> (b) To preserve and strengthen family ties, including improvement of the home environment.

For the state to declare its responsibility to protect and foster the parent-child relation-

---

**3.** E.A. Grollman, Ed., *In Explaining Death to Children,* Beacon Press, Boston, 1967; Wass & Corr, *Childhood and Death,* Hemisphere Publishing Co., McGraw-Hill, Washington (1984).

**4.** *See, e.g.,* Johnson and Rosenblatt, *Grief Following Childhood Loss of a Parent,* American Journal of Psychotherapy, Vol. XXXV, No. 3, July 1981; Dietrich, *Psychological Health of Young Adults Who Experienced Early Parent Death: MMPI Trends,* Journal of Clinical Psychology 40, 1984.

ship in this context and to ignore it when a third party negligently injures the family unit is too anomalous to be countenanced.

In holding that the Reighley children have an independent claim for the loss of parental consortium and companionship for the alleged negligent death of their mother, I concur in certain guidelines set forth by other jurisdictions for the management and determination of these actions. Wherever feasible, a child's claim must be joined with that of a parent. If the child's claim is brought separately, the burden will be on the minor to show why joinder is not feasible. Moreover, there must be a showing that a minor child is dependent on the deceased parent for both economic and emotional support. Each case should be judged on its own merits.

Upon the foregoing, it is

ORDERED that defendant's motion for partial summary judgment, filed June 22, 1984, is granted in part and denied in part in accordance with this opinion, and it is

FURTHER ORDERED that the order to show cause, filed October 22, 1984, is discharged.