**Willard A. BEIKMANN, et al., Plaintiffs,**

**v.**

**INTERNATIONAL PLAYTEX, INC., Defendant.**

**Civ. A. No. 85–C–2296.**

United States District Court, D. Colorado.

April 22, 1987.

Jerrie Eckelberger, Ronald Griffith, Littleton, Colo., for plaintiffs.

Dawn E. Pyshnik, Raymond J. Connell, Hall and Evans, Denver, Colo., for defendant.

## AMENDED MEMORANDUM
## OPINION AND ORDER

CARRIGAN, District Judge.

Willard A. Beikmann filed this action on behalf of himself and his minor son Kevin against International Playtex, Inc. ("Playtex"). Plaintiff claims that Playtex's negligence caused the death of his wife and Kevin's mother, Barbara D. Beikmann, who died at the age of 38. According to the plaintiff her death resulted from using Playtex Tampons.

Defendant has moved, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss certain portions of the plaintiffs' complaint for failure to state a claim. Plaintiffs have opposed the motions. The issues have been thoroughly briefed and oral argument would not assist materially in their determination. Jurisdiction is based on diversity under 28 U.S.C. § 1332(a)(2), and Colorado substantive law governs.

### I. *Surviving Spouse and Child as Proper Parties Plaintiff.*

Defendant argues that the minor plaintiff, Kevin Beikmann, is not a proper party plaintiff because the right to commence an action for wrongful death in the first year after the death is vested exclusively in the surviving spouse. Section 13–21–201(1), Colo.Rev.Stat., provides that an action for wrongful death may be brought:

"(a) by the husband or wife of the deceased; or

(b) if there is no husband or wife or he or she fails to sue within one year after such death, then by the heir or heirs of the deceased. . . ."

Barbara Beikmann died on October 18, 1984. Willard Beikmann initiated this action individually and on behalf of his son on October 18, 1985. Rule 6, Fed.R.Civ.P., provides:

"In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included."

Defendant argues, therefore, that the statutory one-year period ran through October 19, 1985, and that the action, as to the minor plaintiff, was filed one day too soon.

The surviving spouse's exclusive right to file for wrongful death in the first year following death may be waived. It is no more than a preference favoring the surviving spouse. Thus, the surviving spouse may sue during the first year with or without the minor. *Reighley v. Interna-*

*tional Playtex, Inc.*, 604 F.Supp. 1078 (D.Colo.1985). Alternatively, the surviving spouse may sue during the second year with or without the minor. *Peck v. Taylor*, 38 Colo.App. 90, 554 P.2d 698 (1976).

This is not a case where a minor, against the surviving spouse's wishes, has attempted to breach the exclusivity privilege by officiously interjecting himself into a suit filed during the first year by the surviving spouse. Rather here the father and surviving spouse waived his preference and sued on behalf of his minor son, as well as himself.

The practical reasons underlying recognition of a waiver in these circumstances are buttressed by the fact that the wrongful death statute confers upon the minor a proprietary right to share in any judgment the surviving spouse receives. Colo.Rev. Stat. § 13–21–201(2). As Judge Moore pointed out in *Reighley v. International Playtex, Inc.*, 604 F.Supp. 1078, 1080 (D.Colo.1985): "[T]he addition of the children as parties would appear to offend neither the statutory scheme or precedent. This is particularly true since the children have a statutory right to share in any judgment recovered." As the plaintiff argued in *Reighley,* because the children had a proprietary interest in the judgment in any event, their inclusion in the pleading may be construed as merely notification that suit is brought on their behalf. *Id.* To hold otherwise would be to choose form over substance and legal technicality over practical justice.

Defendant's motion to dismiss the action as to the minor Kevin M. Beikmann as a party plaintiff is denied.

## II. *Exemplary or Punitive Damages for Outrageous Conduct.*

■ Plaintiffs' pray for exemplary and punitive damages in their seventh claim seeking relief for outrageous conduct. Defendants request that those prayers be stricken on the ground that exemplary or punitive damages may not be awarded in a Colorado wrongful death action. The Colorado Wrongful Death Statute, Colo.Rev. Stat. § 13–21–202, limits recovery to compensatory damages, and Colorado courts repeatedly have restricted that remedy to net pecuniary loss. *See, e.g., Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981). Thus applying Colorado law as I must, I conclude that exemplary or punitive damages are not recoverable under the wrongful death claim here asserted. *Mangus v. Miller*, 35 Colo.App. 335, 535 P.2d 219, *cert. dismissed,* 189 Colo. 481, 569 P.2d 1390 (1975).

■ Outrageous conduct claims, in contrast to wrongful death actions, arise from the common law and are personal torts. *DeCicco v. Trinidad Area Health Ass'n.*, 40 Colo.App. 63, 573 P.2d 559, 562 (1977). Damages for emotional harm, and similar non-pecuniary loss damages, as well as damages whose purpose is to punish and deter outrageous actions, are integral to the purposes of the outrageous conduct tort. An outrageous conduct claim is neither wholly dependent for its existence upon, nor limited as to scope of damages to, the rules limiting wrongful death claims. Each is a separate claim for relief or, under the older terminology, cause of action, that must stand or fall on its own merits. *Id.*

Defendant's motion to strike the plaintiff's prayer for exemplary or punitive damages for outrageous conduct is denied.

## III. *Independent Action for Loss of Child's Parental Consortium and Companionship.*

■ The complaint asserts on behalf of the minor plaintiff Kevin Beikmann, an independent right of action to recover from the defendant for loss of parental support, training and attention resulting from the tortious death of his mother. Defendant Playtex has moved to dismiss this claim.

Parental consortium [1] is an evolving concept in the ever developing common law

---

**1.** Loss of consortium is typically thought of as a loss of society, affection, assistance and conjugal fellowship. *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190 (Wash.1984). In the parent-child relationship, the term consor-

tium refers to the loss of a parent's love, care, companionship and guidance. Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious*

whose genius is its capacity to accommodate and grow in order to address societal needs that change with time and circumstances. The common law, however, has been slow to progress toward protecting the interests of the child in his or her family status.

As early as 1916, Dean Roscoe Pound wrote:

"As against the world at large a child has an interest ... in the society and affection of the parent, at least while he remains in the household. But the law has done little to secure these interests. At common law there are no legal rights which protect them....

\* \* \* \* \* \*

It will have been observed that legal securing of the interests of children falls far short of what general considerations would appear to demand." Pound, *Individual Interests in the Domestic Relations*, 14 Mich.L.Rev. 177, 185–86 (1916).

Until recent years, Pound's critical commentary on the law's failure to define and enforce the rights of children remained absolutely valid and timely. As recently as 1971, the late Dean William Prosser commented:

"It is not easy to understand or appreciate this reluctance to compensate the child who has been deprived of the care, companionship and education of his mother, or for that matter his father, through the defendant's negligence. This is surely a genuine injury, and a serious one, which has received a great deal more sympathy from the legal writers than from the judges." W. Prosser, *Torts* § 125, p. 896 (4th ed. 1971).

Playtex, in its motion to dismiss Kevin Beikmann's claims for loss of parental consortium, argues that the question of whether an independent action for loss of parental consortium should be recognized ought to be left to the Colorado General Assembly. Defendant correctly states that the majority of courts that have considered the question have declined to acknowledge the existence of this cause of action.[2] The modern trend of authority and the more persuasive cases, however, have recognized the child's right to parental consortium. *See, e.g., Hay v. Medical Center Hospital of Vermont*, 145 Vt. 533, 496 A.2d 939 (1985); *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190 (1984); *Theama By Bichler v. City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513 (1984); *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (1981); *Ferriter v. Daniel O'Connell's Sons*, 381 Mass. 507, 413 N.E.2d 690 (1980). Clearly the need of a child for the law's protection is greater than the need of a spouse, because an adult is more likely able to fend for himself or herself. In this age of single parent families many children who lose a parent have no other to guide, comfort and support them on the hazardous road to responsible adulthood. If the wrongdoer who inflicts the loss is not to be held responsible, the cost will be borne by society either through providing a substitute for a home environment and step-parents, or by paying the usually higher cost attendant on dealing with the social and psychological problems frequently created by children of shattered families when they become juveniles and adults.

Judge Moore in *Reighley, supra,* recognized such an action. There he held that the Reighley children had an independent claim for loss of parental consortium for the death of their mother caused, as in the case at bar, by use of Playtex Tampons. In reaching his decision, Judge Moore reasoned that parental consortium encompasses a complex of familial rights including care, comfort, guidance, society and companionship.[3] *Id.* at 1081. In addition to these important rights, he noted that the

*Injury to the Parent,* 56 B.U.L.Rev. 722, 723 (1976).

2. *See* H. Clark, *Domestic Relations* 279 (1978); Annot., *Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent,* 11 A.L.R. 4th 549 (1982).

3. At the outset of his order, Judge Moore noted that recognition of a child's independent action for loss of parental consortium had found considerable support in legal commentary. *See, e.g.,* Maynes, *Loss of Parental Consortium,* 8 J.Juv.L. 219 (1984); Note, *A Minor Child's Claim for Lost Parental Society and Companionship in Illinois: Another Look,* 17 J.Mar.L.R. 113 (1984);

family unit has certain recognized constitutional protections and liberty interests. *Id.* *See, e.g., Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Wise v. Bravo,* 666 F.2d 1328 (10th Cir.1981). He relied on the clearly demonstrated legislative policy in Colorado to protect a child's right to a secure home environment, as expressed in the Colorado Children's Code, Colo.Rev. Stat. § 19–1–101, *et. seq.* That code provides:

"(1) The general assembly declares that the purposes of this title are:

(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

(b) To preserve and strengthen family ties, including improvement of the home environment."

He then concluded that:

"For the state to declare its responsibility to protect and foster the parent-child relationship on this context and to ignore it when a third party negligently injures the family unit is too anomalous to be countenanced." *Reighley,* 604 F.Supp. at 1083–84.

Defendant has not cited any Colorado authority directly on point. However the Colorado Supreme Court in *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986) addressed the issue in the context of a personal injury to the parent not resulting in death. There Chief Justice Quinn for an unanimous court, without mentioning the modern trend, the *Reighley* opinion, or the views of legal scholars who have addressed the subject, held that, at least in the context of personal injury claims not involving death, any expansion of law to allow children to recover for loss of parental companionship and support must come through legislation. While death claims are far less frequent than injury claims, and thus the Colorado Supreme Court might choose to distinguish them, it seems unlikely. I am bound to try to predict the course of the Colorado courts, and in light of *Lee* it appears that the reform sought by the plaintiff must await legislative action.

Defendant's motion to dismiss Willard Beikmann's claim for loss of spousal consortium is denied. Defendant's motion to dismiss Kevin Beikmann's claim for loss of parental consortium is granted.

Accordingly,

IT IS ORDERED that the defendant's motion to dismiss and amended motion to dismiss are denied, except that the motion to dismiss Kevin Beikmann's claim for loss of parental consortium is granted.

Note, *Rights of a Child to a Cause of Action for Loss of Society and Companionship When the Parent is Tortiously Injured,* 28 Wayne L.Rev. 1877 (1982); Note, *Parents' Right to Sue for Negligent Disruption of Parental Consortium,* 22 Washburn L.J. 78 (1982); Note, *The Child's* *Right to Sue for Loss of a Parents' Love, Care and Companionship Caused by Tortious Injury to the Parent,* 56 B.U.L.Rev. 722 (1977); Comment, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal,* 13 San Diego L.Rev. 231 (1975).